# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CRIMINAL NO. 19-355 (CCC) |
| | * | 19-1603 M |
| FREDDIE RAMOS ORTIZ (3) | * | |
| Defendant. | * | |
| | * | |

## MOTION FOR RECUSAL OF MAGISTRATE McGIVERIN FROM THE MOTION TO QUASH PURSUANT TO 28 U.S.C. § 455 AND THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

TO THE HONORABLE BRUCE J. McGIVERIN,
MAGISTRATE JUDGE OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO.

Defendant FREDDIE RAMOS ORTIZ by his attorneys Laura Maldonado Rodríguez and Jean D. Barrett, respectfully moves the Court to recuse itself from presiding over the Motion to Quash the Search Warrant because it was this Court which issued the Search Warrant.

1.  Defendant Freddie Ramos Ortiz (hereinafter, "Defendant"), by and through his attorneys, hereby submits the instant motion for recusal and incorporated memorandum of law in support thereof. Defendant respectfully submits that this Court should recuse itself from the instant motion because it is the court that issued the warrant challenged in this proceeding.

2. On May 14, 2019, Angel David Lopez Zayas was charged via complaint of conspiracy to the commit robbery interfering with interstate commerce (Hobbs Act), 18 U.S.C. § 1951; with robbery interfering with interstate commerce (Hobbs Act), 18 U.S.C. § 1951; with use, carry and discharge of a firearm during and in relation to a crime of violence; with use, carry and discharge of a firearm during and in relation to a crime of violence resulting in death and with stealing a firearm, all in violation of sections of 18 U.S.C. § 924(c) (j) and (l), (Doc. 11[1]).

3. The facts related in the affidavit in support of the criminal complaint detailed the crime charged against Lopez Zayas and included conduct of three unnamed individuals.

4. On June 11, 2019 the grand jury indicted Lopez Zayas and three individuals, including the defendant Freddie Ramos Ortiz. The indictment charged the foursome with conspiracy to the commit robbery interfering with interstate commerce (Hobbs Act), 18 U.S.C. § 1951, as charged in count one of the indictment; with robbery interfering with interstate commerce (Hobbs Act), 18 U.S.C. § 1951, as charged in count two of the indictment; with carjacking resulting in murder, 18 U.S.C. § 2119, as charged in count three of the indictment; with use, carry and discharge of a firearm during and in relation to a crime of violence, 18

---

[1] Unless otherwise stated, all document docket entry numbers refer to case 19-355 (CC).

U.S.C. § 924(c), as charged in count four of the indictment; with use, carry and discharge of a firearm during and in relation to a crime of violence resulting in death, 18 U.S.C. § 924(j), as charged in count five of the indictment; and with stealing a firearm, 18 U.S.C. § 924(l) as charged in count six of the indictment, (Doc. 3).

5.      On June 15, 2019 defendant Freddie Ramos Ortiz turned himself in at a police station in New Haven, Connecticut. He was committed to the District of Puerto Rico on June 17, 2019, (Doc. 19).

6.      On August 6, 2019 defendant Freddie Ramos Ortiz appeared before Honorable Camille Velez Rive, US Magistrate Judge, for initial appearance and was appointed counsel, (Doc. 30).

7.      On August 7, 2019 counsel for Mr. Ramos Ortiz moved for appointment of learned counsel pursuant to 18 U.S.C. § 3005 and Local Rule 144A of the Local Rules for the District of Puerto Rico, (Doc. 33).

8.      On August 15, 2019 this Court authorized a search warrant to obtain DNA samples in the form of buccal cells on oral swabs and hair follicle from Ricardo Perez Delgado, defendant number 2 in the indictment, and from Mr. Ramos Ortiz. The buccal cells would be collected from "the inside cheek portion of the mouth" and the hair follicles from "hair on the head or body." The search warrant also authorized the taking of fingerprints "utilizing ink to record all

fingerprints, palm prints and any and all other ridges on the hands." The order included language that all procedures would be performed pursuant to "standard practices and procedures employed by the FBI," (Doc. 1: 19-1603 M).

9.     On August 16, 2019, co-counsel Miguel Oppenheimer alerted counsel for Mr. Ramos Ortiz of the existence of the search warrant and sent her a copy via electronic mail. On the same day, Mr. Ramos Ortiz moved to quash the search warrant (doc. 43) and to stay the execution of the warrant until after the motion to quash had been resolved, (Doc. 5: 19-1603 M).

10.    On August 19, 2019, the District Court referred the motion to quash to this Court for disposition.

11.    28 U.S.C. §455(a) provides in full, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As such, the critical inquiry is not whether the court is capable of impartially presiding over the case, rather the statute requires recusal in any case in which the judge's "impartiality might reasonably be questioned."

12.    In both civil and criminal proceedings, the defendant is entitled to a neutral magistrate, one that is free not merely of actual bias but also the appearance of bias.  *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 (1988); *see also* 28 U.S.C. §§144, 455.    28 U.S.C. §455(a) provides that " [a]ny justice,

judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "'[I]f the question of whether §455(a) requires disqualification is a close one, the balance tips in favor of recusal.'" *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001) (*quoting, Nichols v. Alley*, 71 F.3d 347, 352 [10th Cir. 1995]). *See also In re Reassignment of Cases*, 736 F.3d 118 (2d Cir. 2013); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001) (holding that "the benefit of the doubt must be resolved in favor of recusal"), *citing, United States v. State of Alabama*, 828 F.2d 1532, 1540 (11th Cir. 1987).

13.   The instant application is being brought under §455 and the Due Process Clause of the United States Constitution.  *See In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."); *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877-81 (2009) (even when judge does not have any direct, personal, substantial, pecuniary interest in case, of kind requiring his or her disqualification at common law, there are circumstances in which probability of actual bias on part of judge is too high to be constitutionally tolerable).  The court "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, <u>or personal knowledge of disputed evidentiary facts concerning the proceeding</u>" (emphasis added).

14. "Bias" in the context of recusal does not always take on a pejorative character. Recusal is mandated both when a judge impartially favors one party over another <u>and</u> when the underlying dispute would require an examination of the court's personal knowledge of facts, like here, that are outside the record. *See United States v. Liteky,* 510 U.S. 540 (1994) (examining "extrajudicial source doctrine"). Similarly, the underlying presumption of recusal under Section 455(a) is that a judge's actual bias is not required to warrant recusal, recusal is required **A**in any proceeding in which [the court's] impartiality *might reasonably be questioned.*" 28 U.S.C. § 455(a) (emphasis added). Thus, 28 U.S.C. § 455(a) is not limited to actual bias, a "reasonable person" or "disinterested observer" standard is applied. As the First Circuit has explained:

> Section 455(a) requires that we ask whether a reasonable person, fully informed of all the relevant facts, would fairly question the trial judge's impartiality.

*In re United States (Franco),* 158 F.3d 26, 31 (1st Cir. 1998).

15. As the provisions of Section 455(a) have been historically invoked under diverse circumstances, the development of this objective "disinterested observer" standard has become increasingly nuanced in the context of recusal. In applying Section 455(a), "the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality *are not the issue." United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993) (emphasis added). Instead, disqualification is

required if "a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir 1996) (internal quotation mark and citation omitted).

16. Whoever else this "reasonable person" or "disinterested observer" may be, he or she is not a judge, because judges, keenly aware of the obligation to decide matters impartially, "may regard asserted conflicts to be more innocuous than an outsider would." *United States v. Bergrin*, 682 F.3d 261, 282 n.26 (3d Cir. 2012), *quoting, In re Kensington Int'l Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004). At the same time, the hypothetical observer "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998), *cert. denied*, 119 S. Ct. 1793 (1999). Therefore, recusal is examined in the context of how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person. *See In Re Mason*, 916 F.2d 384, 386 (7th Cir. 1990). As the Fifth Circuit explained in *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995):

> Problematic is the fact that judges do not stand outside of the judicial system; they are intimately involved in the process of obtaining justice. Judges who are asked to recuse themselves are reluctant to impugn their own standards. Likewise, judges sitting in review of others do not like to cast aspersions. 'Yet drawing all inferences

> favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety' [In re Mason, 916 F.2d at 386]. Accordingly, we are mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary.

17. As previously noted, if the resolution of Section 455(a) is a close question, the balance tips in favor of recusal. *See In re Boston Children's Hosp.*, 244 F.3d at 167. *See also In re United States*, 158 F.3d at 30; *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003); *Nichols v. Alley,* 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989). Indeed, under the Section 455(a) recusal standard, any reasonable doubts about the partiality of the judge ordinarily are to be resolved in the defendant's favor. *See In Re United States*, 441 F.3d 44, 56 (1st Cir.2006); *United States v. Snyder*, 235 F.3d 42, 46 (1st Cir. 2000).

18. The Supreme Court clarified the proper approach for dealing with recusal motions in *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009). There, the Court reviewed the denial of a recusal motion by a state appellate judge who, prior to his election to the state's appellate court, had received campaign contributions from the defendant in a lawsuit appealing from a judgment. Writing for the majority, Justice Kennedy noted that there appeared to be no evidence that

the judge who had denied the recusal motion had harbored any bias in favor of the party who had contributed to his campaign. Indeed, in the course of the litigation, the judge had written several opinions detailing how he had conducted a "probing search into his actual motives and inclinations" and "found none to be improper". *Id.* at 883. Nevertheless, in ruling that the judge in *Caperton* had erred when he denied the motion for recusal, Justice Kennedy explained the appropriate standard for determining such motions:

> The difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules. Otherwise there may be no adequate protection against a judge who simply misreads or misapprehends the real motives at work in deciding the case. The judge's own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be grounds for appropriate relief. In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge's determination respecting actual bias, the Due Process Clause has been implemented by objective standards that do not require proof of actual bias.

*Id.* at 883. The Court then elaborated, "In defining these standards the Court has asked whether, "under a realistic appraisal of psychological tendencies and human weakness, 'the interest' poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 883-84, *quoting, Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

19. Most recently, the Court address the recusal issue in a capital case in the context of a justice on the Pennsylvania Supreme Court who participated in a decision to deny the petitioner relief in a case that he had participated in as the county prosecutor. The Court reaffirmed its previous decisions:

> Bias is easy to attribute to others and difficult to discern in oneself. To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present. The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton, 556 U.S., at 881, 129 S. Ct. 2252, 173 L. Ed. 2d 1208*. Of particular relevance to the instant case, the Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. See *Murchison, 349 U. S., at 136-137, 75 S. Ct. 623, 99 L. Ed. 942*. This objective risk of bias is reflected in the due process maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id., at 136, 75 S. Ct. 623, 99 L. Ed. 942*.

*Williams v. Pennsylvania*, 136 S.Ct. 1899, 1905 (2016).

20. Here, this Court issued the search warrant, the validity of which is challenged by the Motion to Quash. This court clearly has knowledge of facts unknown to Ramos and his counsel, on the one hand: the content of the affidavit that accompanies the search warrant application, which the government has refused

to disclose until after the warrant is executed, and the reasons to issue a warrant not clearly under the purview of Federal Rule of Criminal Procedure 41, on the other.

21. Consequently, we respectfully submit that the defendant's right to Due Process and § 455 would be violated and there would be the appearance of partiality should this Court continue presiding over the motion. We respectfully submit that this Court should recuse itself from adjudicating the Motion to Quash.

WHEREFORE it is respectfully requested that this Honorable Court consider the arguments recuse itself from adjudicating the motion to quash the search warrant issued.

In San Juan, Puerto Rico, on the 30th day of August of 2019.

*s/Laura Maldonado Rodriguez*
Laura Maldonado Rodriguez
USDC-PR 205701
lmr7771@aol.com
P. O. Box 11533
San Juan, Puerto Rico 00922-1533
Tel. (787) 413-7771

*s/Jean D. Barrett*
Jean D. Barrett
jeanbarrett@ruhnkeandbarrett.com
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042
(973) 744-1000

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this MOTION was filed through the CM/ECF system.  The U.S. Attorney's Office for the District of Puerto Rico is designated as the party to be notified through the system.

In San Juan, Puerto Rico this 30th day of August, 2019.

*S/ Laura Maldonado Rodriguez*
LAURA MALDONADO RODRIGUEZ
USDC-PR 205701
lmr7771@aol.com
P. O. BOX 11533
SAN JUAN, P. R. 00922-1533
T. 787-413-7771